*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAVON MAURICE KINNARD,

Defendant-Appellant.

UNPUBLISHED
August 25, 2022

No. 358252
Wayne County Circuit Court
LC No. 18-007077-01-FH

Before: RIORDAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Defendant pleaded guilty to three counts of stealing, taking, or removing a financial transaction device without consent, MCL 750.157n(1); three counts of illegal delivery, circulation, or sale of a financial transaction device, MCL 750.157q; and two counts of possession of a financial transaction device with intent to use, deliver, circulate, or sell, MCL 750.157p. Defendant was originally sentenced to one year of probation under the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.*, for these offenses. However, defendant violated his probation by committing multiple similar offenses. As a result, both his probation and his HYTA status were revoked, and he was sentenced to 32 months to four years in prison. This sentence constituted an upward departure from the recommended sentencing guidelines range of zero to nine months in jail. Defendant now appeals by delayed leave granted[1] his upward departure sentence. We affirm.

## I. FACTS

In October 2018, defendant pleaded guilty to eight property offenses, as noted above. He was sentenced to one year of probation under HYTA. Subsequently, while on probation, defendant was arrested for an additional three offenses relating to the illegal use of a financial transaction device in Oakland County. A violation of probation warrant was issued, and defendant was arraigned on June 26, 2019. A probation violation hearing was set for July 8, 2019, for which

_____

[1] *People v Javon Kinnard*, unpublished order of the Court of Appeals, entered September 30, 2021 (Docket No. 358252).

-1-

defendant failed to appear, and another warrant was issued for his arrest. Meanwhile, defendant was also charged with three counts of stealing or retaining a financial transaction device without consent, as well as a crime arising from an attempt to obstruct a police investigation by providing a false name to a police officer.

The sentencing guidelines provided for a minimum sentence of zero to nine months in jail. However, the trial court departed upward, sentencing defendant to a prison term of 32 months to four years.[2] The trial court stated, on record, the following reasons for departure:

> Mr. Kinnard, this is very serious stuff here. These crimes have victims. There are people who suffer losses as a result of the kinds of crimes you've committed. Businesses suffer losses. And then there's the uncertainty that they have to deal with in the future, never knowing how, when or where the loss may end. Because identity theft or, you know, stealing personal documents from people can be something that, you know, goes on for a while without even the victim ever knowing and it screws up the victim's credit and it just has calamitous consequences. . . .

> You were convicted here in this court on October the 2nd, 2018, just only about two years ago, for stealing or retaining financial transaction devices, you actually pled guilty to some eight counts, the various kinds of crimes about that in that crime category and you got probation under the Holmes Youthful Trainee Act. Then not five months later on March the 5th, 2019, a warrant was signed charging you with new criminal activity. And I gather that was the, I think that was the Bloomfield Township incident. That was on February 15, 2019, the Defendant was arrested by Bloomfield Township Police Department and charged with, again, guess what, two counts of conspiracy to steal, retain without consent or use a financial transaction device. And those charges represent, resulted in the Oakland County case. . . .

> But in addition to that, you were charged with three counts in the 52-4 District Court, you were charged with three counts of financial transaction device, stealing and/or retaining. According to the presentence investigation report you haven't even been arrested or arraigned on those charges yet. But you were arrested in Livonia on October the 18th, 2019, charged there with a crime called disguise self with attempt to obstruct law enforcement. . . . You got the break of your life. You got Holmes Youthful Trainee status of probation but then you just keep committing the same types of crimes. And I'm glad you have family support, but maybe you've got too much family support. . . .

At a subsequent hearing following a motion for resentencing, the trial court affirmed its earlier sentence, citing similar reasons as before and adding the following reason:

> But I also was reminded in reviewing the presentence report that after I signed a warrant charging Mr. Kinnard with violating his probation, um, he was

---

[2] A different trial judge presided over the proceedings following the probation violation.

-2-

arraigned on the warrant and given a sentencing date and then promptly failed to appear on his sentence date. I had to sign a warrant, we had to get a warrant out, he had – he was arrested on the warrant apparently and reeled back into court. You know, that doesn't udder [sic] well for the extent to which he may have redeemed himself before I resentenced him.

Defendant now appeals his upward departure sentence.[3]

## II. UPWARD DEPARTURE

When a trial court revokes a defendant's probation, the trial court is permitted to sentence the defendant to the same penalty that the court might have imposed if the probation order had never been made. *People v Hendrick*, 472 Mich 555, 561-562; 697 NW2d 511 (2005). The sentencing guidelines apply to a sentence imposed after a probation violation, and the trial court may consider the acts giving rise to the probation violation in determining whether to depart from the guidelines, as well as the original offense for which the defendant was convicted. *Id*. at 557, 560.

"[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). To determine if the sentence imposed was reasonable, the proper inquiry is determining "whether the trial court abused its discretion by violating the principle of proportionality." *Id*. at 461. The length of sentence should be proportionate to the seriousness of the offense and the background of the offender as to not violate the principle of proportionality. *Id*. at 472. Additionally, the trial court must state on record the reasons for departing from that range. *Id*. at 462.

A review of reasonableness evaluates whether the departure sentence imposed violates the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). The principle-of-proportionality test "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 636. A trial court has the authority to depart from the sentencing guidelines if it determines that "the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *Id*. at 657. Generally, trial courts can consider the following factors to determine if the sentence adheres to the principle of proportionality standard:

(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lawhorn*, 320 Mich App 194, 207; 907 NW2d 832 (2017) (quotation marks and citation omitted).]

_____

[3] We note that this appeal may be moot, see *People v Rutherford*, 208 Mich App 198, 204; 526 NW2d 620 (1994), but will nonetheless decide the merits.

Further, when the appellate court reviews a departure from the sentencing guidelines, the appellate court must evaluate if there are reasons for the departure and reasons for the extent of the departure. *Milbourn*, 435 Mich at 659-660. Said differently, if there are reasons for the departure from the sentencing guidelines, there must also be reasons justifying the extent of that departure as to not violate the principle of proportionality. *Id*.

In this case, to determine whether the upward departure was reasonable, it is necessary to compare the reasons cited by the trial court for the upward departure with the variables that were scored and resulted in a guidelines range of zero to nine months in jail. The pertinent variables were scored as follows: prior record variable (PRV) 7 was scored at 20, offense variable (OV) 13 was scored at five, and OV 16 was scored at five.

First, PRV 7 addresses the defendant's subsequent or concurrent felony convictions, providing that a score of 20 is warranted when the defendant "has 2 or more subsequent or concurrent convictions." MCL 777.57(1)(a). Here, as the trial court noted, defendant had eight simultaneous convictions. In other words, there were seven concurrent convictions with the sentencing conviction. Because PRV 7 only contemplates two or more concurrent convictions, and because defendant far exceeded this number with seven concurrent convictions, we do not find that the trial court abused its discretion in finding that PRV 7 did not sufficiently consider his contemporaneous criminal behavior.[4]

Second, OV 13 addresses "continuing pattern of criminal behavior," providing that a score of five is warranted when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against property." MCL 777.43(1)(f). As with PRV 7, the trial court did not abuse its discretion in finding that OV 13 failed to sufficiently contemplate defendant's contemporaneous criminal behavior. He was convicted of eight related property crimes, and OV 13 only contemplates three or more property crimes. Because defendant far exceeded the number of property crimes contemplated by OV 13, that variable did not sufficiently consider his criminal behavior.

Third, OV 16 relates to property that is "obtained, damaged, lost, or destroyed." It provides that a score of five is warranted when the stolen property "had a value of $200.00 or more but not more than $1,000.00." MCL 777.46(1)(e). The trial court stated that defendant's crimes were not victimless crimes and that people have suffered losses as a result of his criminal activities. This reason was already contemplated by OV 16 because that variable inherently assesses points for imposing financial losses on victims of crimes.

---

[4] While it might be true that a minor increase in the number of concurrent convictions from the two contemplated by PRV 7 might not warrant an upward departure, in this case, defendant had an astounding eight concurrent convictions. In other words, while three or four concurrent convictions might not support an upward departure, a much higher number, such as eight or nine, would support an upward departure. Similar reasoning is true with respect to OV 13. Otherwise, defendants would have the freedom to continuously commit similar or identical crimes *ad infinitum* without any sentencing repercussions. Such a result would be absurd.

The trial court explained that the upward departure was warranted because defendant was given an "opportunity" with his HYTA status but, after four months, decided to commit multiple similar crimes while on probation. Additionally, defendant failed to appear in court for his probation violation hearing. These reasons are recognized as providing a valid basis for an upward departure. See *People v Harper*, 479 Mich 599, 628 n 51; 739 NW2d 523 (2007) (explaining that a probation violation justifies an upward departure); *id*. at 638 (explaining that absconding during judicial proceedings justifies an upward departure). See also *Hendrick*, 471 Mich at 557, 560.

Taken together, the reasons cited by the trial court support an upward departure. Simply put, as the trial court noted when sentencing defendant, he "steals in a serial fashion." In a nutshell, defendant had convictions for eight property offenses, and then was charged with six similar property offenses while on probation, at least three of which resulted in additional convictions. Further, he was charged with a crime arising from an attempt to obstruct a police investigation. By his egregious conduct, defendant clearly showed no serious attempt to avail himself of the HYTA opportunity that he received for his original, eight guilty pleas to property offenses. Compounding matters, defendant failed to appear for his probation violation hearing. We agree with the trial court that the sentencing guidelines did not adequately account for these facts. Although the 32-month minimum sentence was a significant upward departure from the nine-month minimum, in our view, it was reasonable in light of defendant's numerous property crimes over a relatively short period of time, as well as his contempt for the legal process during that same period of time.[5] Thus, we hold that a 32-month minimum sentence was reasonable and did not violate the principle of proportionality.

## III. CONCLUSION

We conclude that the 32-month minimum sentence imposed by the trial court was reasonable, and the trial court did not abuse its discretion by imposing it. We affirm.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello

---

[5] Although one of the reasons cited by the trial court, the financial impact upon the victims, may not reasonably support an upward departure, because of the multiple other reasons cited by the trial court, we are convinced that the trial court would have nonetheless departed to the same degree without that reason. See *People v Babcock*, 469 Mich 247, 271; 666 NW2d 231 (2003).